## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| KEVIN CHINCHILLA MONTERO, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED COMPLAINT-CLASS ACTION** |
| YOUNG CONSULTING, LLC, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Kevin Chinchilla Montero ( "Plaintiff"), individually and on behalf of all persons similarly situated (the "Class" or "Class Members"), by and through the undersigned counsel, bring this class action complaint against Defendant Young Consulting, LLC ("Young Consulting" or "Defendant"). Plaintiff makes the following allegations based upon personal knowledge with respect to themselves, and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## NATURE OF THE CASE

1.      Plaintiff brings this class action against Young Consulting for its failure

to secure and safeguard patients' personally identifiable information ("PII")[1] protected health information ("PHI")[2] (collectively "Private Information") and for failing to provide timely, accurate, and adequate notice to Plaintiff and Class Members that their Private Information had been compromised.

2.      As a result of Young Consulting's negligence and insufficient data security, cybercriminals easily infiltrated Defendant's inadequately protected computer systems and **stole** the Private Information of Plaintiff and the Class (approximately **954,177 individuals**) (the "Data Breach" or "Breach").[3] Now, Plaintiff's and the Class's Private Information is in the hands of cybercriminals who

---

[1] PII is information that is used to confirm an individual's identity, and in this instance includes at least an individual's name, address, email address, phone number, and Social Security number.

[2] The Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d *et seq*. and its implementing regulations ("HIPAA"), define "protected health information" as individually identifiable information relating to the past, present, or future health status of an individual that is created, collected, or transmitted, or maintained by a HIPAA-covered entity in relation to the provision of healthcare, payment for healthcare services, or use in healthcare operations. 45 C.F.R. § 160.103 *Protected health information*. "Business health information such as diagnoses, treatment information, medical test results, and prescription information are considered protected health information under HIPAA, as are national identification numbers and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information. *Summary of the HIPAA Privacy Rule*, DEP'T FOR HEALTH & HUM. SERVS., https://www.hhs.gov/hipaa/forprofessionals/privacy/laws-regulations/index.html (last visited Oct. 10, 2024).

[3] https://www.maine.gov/agviewer/content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/9cb5e8fe-3d04-48e5-a403-d478cdaf5c7f.html.

will undoubtedly use their Private Information for nefarious purposes for the rest of their lives.

3.    According to Young Consulting, on April 13, 2024, Young Consulting became aware of technical difficulties in its computer environment.

4.    After an investigation, Defendant determined that an unauthorized actor gained access to Defendant's network between April 10, 2024, and April 13, 2024, and downloaded certain files.

5.    The files downloaded and stolen in the data breach included the highly sensitive private information of Plaintiff and the Class, such as: names, Social Security numbers, dates of birth, and insurance claim information.

6.    Following the data breach, threat actor—BlackSuit—claimed responsibility for the Data Breah, confirming Plaintiff's and the Class' Private Information is in the hands of cybercriminals.[4]

7.    Young Consulting is a Georgia-based risk management company that provides services to Blue Shield of California and receives information from Blue Shield relating to these services.

8.    On August 26, 2024, Young Consulting began notifying state attorneys general and victims that it had sustained a massive data breach.

---

[4] https://www.breachsense.com/breaches/young-consulting-data-breach/

9.     As a result of Young Consulting's failure to protect the sensitive information it was entrusted to safeguard, Plaintiff and Class members have already suffered harm and have been exposed to a significant and continuing risk of identity theft, financial fraud, and other identity-related fraud for years to come.

## PARTIES

10.     Defendant Young Consulting, LLC is a Georgia limited liability corporation with its principal place of business at 1 E Wacker Drive, STE 2900, Chicago, IL 60610.

11.     Plaintiff Kevin Chinchilla Montero is a resident and citizen of California. In or about September 2024, Mr. Chinchilla Montero was notified via letter from Young Consulting dated August 26, 2024, that he was a victim of the Data Breach.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists because Young Consulting and at least one Class Member are citizens of different States. This Court also has supplemental jurisdiction over the claims in this case pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein

form part of the same case or controversy under Article III of the United States Constitution.

13.    The Court has personal jurisdiction over Young Consulting because Defendant is a Georgia domestic limited liability company; has members or managers domiciled in this District, conducts substantial business in this District through its headquarters, offices, and affiliates; engaged in the conduct at issue here in this District; and/or otherwise has substantial contacts with this District and purposely availed itself to the Courts in this District.

14.    Venue in the Northern District of Georgia is proper under 28 U.S.C. § 1391 because Young Consulting resides in this District, and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, including Defendant collecting and/or storing the Private Information of Plaintiff and Class Members.

## FACTUAL ALLEGATIONS

### *Young Consulting's Privacy Practices*

15.    Young Consulting is a technology company that "provid[es] software solutions to the employer stop loss marketplace. We develop integrated software solutions for the marketing, underwriting and administering of medical stop loss insurance for carriers, brokers and third party administrators."[5] Young Consulting

---

[5] https://youngconsulting.com/ (last visited September 25, 2024).

holds itself out as "the market leader."

16.    In the ordinary course of business, Young Consulting receives the Private Information of individuals, such as Plaintiff and the Class, from the entities that utilize Young Consulting's services.

17.    Young Consulting obtains, collects, uses, and derives a benefit from the Private Information of Plaintiff and Class Members. Young Consulting uses the Private Information it collects to provide services, making a profit therefrom. Young Consulting would not be able to obtain revenue if not for the acceptance and use of Plaintiff's and the Class's Private Information.

18.    By collecting Plaintiff's and the Class's Private Information, Young Consulting assumed legal and equitable duties to Plaintiff and the Class to protect and safeguard their Private Information from unauthorized access and intrusion.

19.    Young Consulting violated its own privacy statement and failed to adopt reasonable and appropriate security practices and procedures including administrative, physical security, and technical controls to safeguard Plaintiff's and the Class's Private Information.

20.    As a result, Plaintiff's and Class Members' Private Information was accessed and stolen from Young Consulting's inadequately secured data systems in a massive and preventable Data Breach.

***The Data Breach***

21.    Between at least April 10 and April 13, 2024, a hacker infiltrated Young Consulting's network and accessed and exfiltrated a massive amount of highly sensitive Private Information stored on its servers, including full names and Social Security numbers of victims.

22.    Young Consulting did not disclose the existence of the Data Breach until four months after its discovery on April 13, when it began notifying state attorneys general and affected victims on August 26, 2024.

23.    In its notice to state attorneys general, Young Consulting stated:

    a.    It discovered the breach on April 13, 2024;

    b.    The breach occurred between April 10 and April 13, 2024

    c.    Young Consulting described the breach as "an unauthorized actor gained access to Young Consulting's network … and downloaded copies of certain files"; and

    d.    The hackers acquired Name or Other PII, insurance claim information, and Social Security numbers of nearly one million patients.[6]

---

[6] https://ago.vermont.gov/sites/ago/files/documents/2024-08-27%20Young%20Consulting%20%20Data%20Breach%20Notice%20to%20Consumers.pdf.

24.    Young Consulting's sample form notification letter provides the following description:

> On April 13, 2024, Young Consulting became aware of technical difficulties in our computer environment. We immediately took certain systems offline to contain the incident and launched an investigation, with the assistance of a cybersecurity forensics firm, to determine the nature and scope of the event. The investigation determined that an unauthorized actor gained access to Young Consulting's network between April 10, 2024, and April 13, 2024, and downloaded copies of certain files. During our review process, we worked to determine what information was contained within the involved files, and to identify the individuals whose information may have been involved. That process was recently completed and Young Consulting provided Blue Shield with copies of the files potentially impacted. On June 28, 2024, Young Consulting provided confirmation to Blue Shield that those files were accessed by an unauthorized actor. We then worked to identify appropriate contact information for the potentially impacted individuals so that we could provide notification.[7]

25.    From Young Consulting's notice it is unclear: exactly when information was taken; when Young Consulting "launched an investigation"; the total extent of what data was exposed; when Young Consulting took action to stop the breach; and whether the breach has actually been stopped.

26.    The only meaningful information Young Consulting's notice provides is that all or nearly all of the victims' information was compromised.

27.    Young Consulting's notice also discusses actions Young Consulting claims to have taken in response to the Data Breach, stating, "[w]e immediately took

---

[7] *Id.*

certain systems offline to contain the incident."[8]

28.     Absent from the notice are any details of how the breach happened or how Young Consulting's actions have remediated the root cause.

29.     Young Consulting provides no explanation for why it delayed notifying victims about the Data Breach for almost four months after it detected the Data Breach. The Private Information of Plaintiff and Class Members could have been in the hands of hackers for nearly four months before Young Consulting attempted to notify affected victims. By waiting this long to disclose the Data Breach and by downplaying the risk that victims' Private Information would be misused by bad actors, Young Consulting prevented victims from taking meaningful, proactive, and targeted mitigation measures to protect themselves from harm.

30.     Shortly after the Data Breach, cybercriminal ransomware group— BlackSuit—claimed responsibility for the Breach and has already leaked data stolen from the Breach.[9]

---

[8] *Id*.

[9] https://www.bleepingcomputer.com/news/security/blacksuit-ransomware-stole-data-of-950-000-from-software-vendor/.



32.    BlackSuit claims, "Top management completely refused to negotiate, thinking that we are bluffing." "Business partners and employees – REMEMBER, Young Consulting management does not care about you or your personal information."[10]

33.    BlackSuit conducts data exfiltration and extortion prior to encryption and then publishes victim data to a leak site if a ransom is not paid. Phishing emails are among the most successful vectors for initial access by BlackSuit threat actors. After gaining access to victims' networks, BlackSuit

---

[10] *Id.*

actors disable antivirus software and exfiltrate large amounts of data before ultimately deploying the ransomware and encrypting the systems."[11]

34.    BlackSuit was a known risk to Defendant, but Defendant failed to take adequate precautions to prevent BlackSuit from infiltrating its systems.

35.    Young Consulting failed to take the necessary precautions required to safeguard and protect Plaintiff's and Class Members' Private Information from unauthorized access and exploitation.

36.    Defendant's actions represent a flagrant disregard of the rights of Plaintiff and the Class, both as to privacy and property.

### The Data Breach was Preventable

31.    In response to the Data Breach, Young Consulting stated it "launched an investigation, with the assistance of a cybersecurity forensics firm."[12]

32.    But Young Consulting, like any company of its size that stores massive amounts of sensitive personal data, should have had robust protections in place to detect and terminate a successful intrusion long before access and exfiltration could expand to nearly one million patient files. Young Consulting's only disclosed tangible response to the Data Breach was to "t[ake] certain systems offline" and

---

[11] https://www.cisa.gov/news-events/cybersecurity-advisories/aa23-061a.

[12] https://ago.vermont.gov/sites/ago/files/documents/2024-08-27%20Young%20Consulting%20%20Data%20Breach%20Notice%20to%20Consumers.pdf.

"reviewing our policies, procedures, and processes related to the storage and access of sensitive information."[13] If the Data Breach was so easily contained or remediated, Young Consulting's failure to prevent the breach is inexcusable given its knowledge that it was a prime target for cyberattacks.

33.     Data breaches and the harm they cause have become so common and notorious the Federal Trade Commission ("FTC") has issued guidance for how to address the destruction caused by an unauthorized person having access to someone's Private Information, warning: "Once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[14]

34.     At all relevant times, Young Consulting knew, or reasonably should have known, of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on individual victims as a result of a breach.

35.     Young Consulting was, or should have been, fully aware of the significant number of victims whose Private Information it collected, and thus, the

---

[13] *Id.*

[14] https://dss.mo.gov/cd/older-youth-program/files/taking-charge-what-to-do-if-identity-is-stolen.pdf.

significant number of victims who would be harmed by a breach of its systems.

36.     But despite all of the publicly available knowledge of the continued compromises of Private Information and despite holding the Private Information of millions of people, Young Consulting failed to use reasonable care in maintaining the privacy and security of the Private Information of Plaintiff and Class Members. Had Young Consulting implemented common sense security measures, hackers never could have accessed the Private Information of nearly one million victims and the Data Breach would have been prevented or much smaller in scope.

### *Allegations Relating to Plaintiff*

37.     Unbeknownst to Plaintiff Chinchilla Montero, Young Consulting obtained Plaintiff Chinchilla Montero's Private Information through Young Consulting's client, Blue Shield of California.

38.     On or about September, 2024, Plaintiff Chinchilla Montero received a notification letter from Young Consulting dated August 26, 2024 stating that he was a victim of the Data Breach and that his "name, Social Security number, date of birth, and insurance claim information" was compromised.

39.     The letter recommended that Plaintiff Chinchilla Montero take certain actions like monitoring his accounts and "remain vigilant against incidents of identity theft and fraud by reviewing your account statements and monitoring your

free credit reports."[15]

40.    Despite making these recommendations, Young Consulting itself was not vigilant against the risks of a data breach.

41.    To protect from additional harm, Plaintiff Chinchilla Montero has been and will continue to be forced to spend significant time and effort engaging in remedial efforts to protect his information from additional attacks. Plaintiff Chinchilla Montero must now continue to spend time and effort reviewing his credit profile and financial and other account statements for evidence of unauthorized activity, which he will continue to do indefinitely. Plaintiff Chinchilla Montero suffered significant distress knowing his highly personal information is no longer confidential and his accounts are being targeted. Given the nature of the information exposed in the Data Breach and the propensity of criminals to use such information to commit a wide variety of financial crimes, Plaintiff Chinchilla Montero faces a significant present and ongoing risk of identity theft and fraud, financial fraud, and other identity-related fraud now and into the indefinite future.

42.    Upon information and belief, Young Consulting continues to store and/or share Plaintiff Chinchilla Montero's Private Information on its systems. Thus,

---

[15] https://ago.vermont.gov/sites/ago/files/documents/2024-08-27%20Young%20Consulting%20%20Data%20Breach%20Notice%20to%20Consumers.pdf.

Plaintiff Chinchilla Montero has a continuing interest in ensuring that the Private Information is protected and safeguarded from future breaches.

43.    Plaintiff Chinchilla Montero suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information; (iii) damages for unauthorized disclosure of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; (ix) lifetime cost of credit monitoring, as ongoing protection is necessary to mitigate the heightened risk of identity theft and financial fraud resulting from the Data Breach; and (x) the continued and certainly increased risk to his Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect the Private Information.

### *Young Consulting Failed to Comply with Federal Law and Regulatory Guidance*

44.    Federal agencies have issued recommendations and guidelines to help minimize the risks of a data breach for businesses holding sensitive data. For

example, the Federal Trade Commission (FTC) has issued numerous guides for business highlighting the importance of reasonable data security practices, which should be factored into all business-related decision making.[16]

45.    The FTC's publication Protecting Personal Information: A Guide for Business sets forth fundamental data security principles and practices for businesses to implement and follow as a means to protect sensitive data.[17] Among other things, the guidelines note that businesses should (a) protect the personal customer information that they collect and store; (b) properly dispose of personal information that is no longer needed; (c) encrypt information stored on their computer networks; (d) understand their network's vulnerabilities; and (e) implement policies to correct security problems. The FTC guidelines further recommend that businesses use an intrusion detection system, monitor all incoming traffic for unusual activity, monitor for large amounts of data being transmitted from their system, and have a response plan ready in the event of a breach.[18]

46.    Additionally, the FTC recommends that organizations limit access to sensitive data, require complex passwords to be used on networks, use industry-

---

[16] https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[17] *Id.*

[18] *Id.*

tested methods for security; monitor for suspicious activity on the network, and verify that third-party service providers have implemented reasonable security measures.[19] This is consistent with guidance provided by the FBI.

47.    The FTC has brought enforcement actions against businesses for failing to reasonably protect customer information, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.[20]

48.    Young Consulting was fully aware of its obligation to implement and use reasonable measures to protect victims' Private Information but failed to comply with these basic recommendations and guidelines that would have prevented this breach from occurring. Young Consulting's failure to employ reasonable measures to protect against unauthorized access to Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

49.    Defendant also failed to meet the minimum standards of the National Institute of Standards and Technology ("NIST") Cybersecurity Framework Version

---

[19] *Id.*

[20] https://www.ftc.gov/news-events/media-resources/protecting-consumer-privacy/privacy-security-enforcement.

1.1.[21]

50.    Young Consulting is required to comply with the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C. The Privacy Rule and the Security Rule set nationwide standards for protecting health information, including health information stored electronically.

51.    The Security Rule requires Young Consulting to do the following:

a.  Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.  Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.  Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.  Ensure compliance by its workforce.[22]

---

[21] https://nvlpubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf.

[22] Summary of the HIPAA Security Rule, HHS, https://www.hhs.gov/hipaa/forprofessionals/security/laws-regulations/index.html.

52.    Pursuant to HIPAA's mandate that Young Consulting follow "applicable standards, implementation specifications, and requirements . . . with respect to electronic protected health information," 45 C.F.R. § 164.302, Young Consulting was required to, at minimum, "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information," 45 C.F.R. § 164.306(e), and "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

53.    Young Consulting is also required to follow the regulations for safeguarding electronic medical information pursuant to the Health Information Technology Act ("HITECH"). See 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

54.    Both HIPAA and HITECH obligate Young Consulting to follow reasonable security standards, respond to, contain, and mitigate security violations, and to protect against disclosure of sensitive patient Private Information. See 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); 45 C.F.R. § 164.530(f); 42 U.S.C. § 17902.

55.    As alleged in this Complaint, Young Consulting has failed to comply with HIPAA and HITECH. It has failed to maintain adequate security practices,

systems, and protocols to prevent data loss, failed to mitigate the risks of a data breach and loss of data, and failed to ensure the confidentiality and protection of PHI.

### The Impact of the Data Breach on Victims

56.     Young Consulting's failure to keep Plaintiff's and Class Members' Private Information secure has severe ramifications. Given the sensitive nature of the Private Information stolen in the Data Breach—names, date of birth, insurance claim information, and Social Security numbers—hackers can commit identity theft, financial fraud, and other identity-related fraud against Plaintiff and Class Members now and into the indefinite future. As a result, Plaintiff has suffered injury and faces an imminent and substantial risk of further injury including identity theft and related cybercrimes due to the Data Breach.

57.     The Private Information exposed in the Data Breach is highly coveted and valuable on underground markets as it can be used to commit identity theft and fraud. Malicious actors use Private Information to, among other things, gain access to consumers' bank accounts, social media, and credit cards. Malicious actors can also use consumers' Private Information to open new financial accounts, open new utility accounts, obtain medical treatment using victims' health insurance, file fraudulent tax returns, obtain government benefits, obtain government IDs, or create

"synthetic identities." [23]

58.    Further, malicious actors often wait months or years to use the Private Information obtained in data breaches, as victims often become complacent and less diligent in monitoring their accounts after a significant period has passed. These bad actors will also re-use stolen Private Information, meaning individuals can be the victims of several cybercrimes stemming from a single data breach.

59.    Victims of the Data Breach face significant harms as the result of the Data Breach, including, but not limited to, identity theft and fraud. Class Members are forced to spend time, money, and effort dealing with the fallout of the Data Breach, including purchasing credit monitoring services, reviewing financial and healthcare statements, checking credit reports, and spending time and effort searching for and responding to unauthorized activity.

60.    It is no wonder then that identity theft exacts a severe emotional toll on its victims. The 2021 Identity Theft Resource Center survey evidences the emotional suffering experienced by victims of identity theft:

- 84% reported anxiety;

- 76% felt violated;

- 32% experienced financial related identity problems;

---

[23] A criminal combines real and fake information to create a new "synthetic" identity, which is used to commit fraud.

- 83% reported being turned down for credit or loans;

- 32% report problems with family members as a result of the breach;

- 10% reported feeling suicidal.[24]

61.    Identity theft can also exact a physical toll on its victims. The same survey reported that respondents experienced physical symptoms stemming from their experience with identity theft:

- 48.3% of respondents reported sleep disturbances;

- 37.1% reported an inability to concentrate/lack of focus;

- 28.7% reported they were unable to go to work because of physical symptoms;

- 23.1% reported new physical illnesses (aches and pains, heart palpitations, sweating, stomach issues); and

- 12.6% reported a start or relapse into unhealthy or addictive behaviors.[25]

62.    The unauthorized disclosure of sensitive Private Information to data thieves also reduces its inherent value to its owner, which has been recognized by

---

[24] https://www.idtheftcenter.org/wp-content/uploads/2021/09/ITRC_2021_Consumer_Aftermath_Report.pdf.

[25] https://www.idtheftcenter.org/wp-content/uploads/images/page-docs/Aftermath_2017.pdf.

courts as an independent form of harm.[26]

63.    Plaintiffs are injured every time their data is stolen and traded on underground markets, even if they have been victims of previous data breaches. Indeed, the dark web is comprised of multiple discrete repositories of stolen information that can be aggregated together or accessed by different criminal actors who intend to use it for different fraudulent purposes. Each data breach increases the likelihood that a victim's personal information will be exposed to more individuals who are seeking to misuse it at the victim's expense.

64.    As the result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer economic loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

    a.    the unconsented disclosure of confidential information to a third party;

    b.    losing the inherent value of their Private Information;

    c.    losing the value of access to their Private Information permitted by Young Consulting;

    d.    identity theft and fraud resulting from the theft of their Private

---

[26] *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig*., 440 F. Supp. 3d 447, 462 (D. Md. 2020) ("Neither should the Court ignore what common sense compels it to acknowledge—the value that personal identifying information has in our increasingly digital economy. Many companies, like Marriott, collect personal information. Consumers too recognize the value of their personal information and offer it in exchange for goods and services.").

Information;

e.   costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

f.   anxiety, emotional distress, and loss of privacy;

g.   the present value of ongoing credit monitoring and identity theft protection services necessitated by Young Consulting's Data Breach;

h.   unauthorized charges and loss of use of and access to their accounts;

i.   lowered credit scores resulting from credit inquiries following fraudulent activities;

j.   costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including searching for fraudulent activity, imposing withdrawal and purchase limits on compromised accounts, and the stress, nuisance, and annoyance of dealing with the repercussions of the Data Breach; and

k.   the continued, imminent, and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being in the possession of one or many unauthorized third parties.

65.   Even in instances where an individual is reimbursed for a financial loss due to identity theft or fraud, that does not make that individual whole again as there is typically significant time and effort associated with seeking reimbursement.

66.   There may also be a significant time lag between when personal information is stolen and when it is misused for fraudulent purposes. According to the Government Accountability Office, which conducted a study regarding data

breaches: "law enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."[27]

67.    Plaintiff and Class Members place significant value in data security. According to a survey conducted by cyber-security company FireEye Mandiant, approximately 50% of consumers consider data security to be a main or important consideration when making purchasing decisions and nearly the same percentage would be willing to pay more to work with a provider that has better data security. Seventy percent of consumers would provide less personal information to organizations that suffered a data breach.[28]

68.    Likewise, the American Bankers Association, reporting on a global consumer survey regarding concerns about privacy and data security, noted that 29% of consumers would avoid using a company that had experienced a data breach, with 63% of consumers indicating they would avoid such a company for a period of

---

[27] http://www.gao.gov/new.items/d07737.pdf.

[28]
https://web.archive.org/web/20220205174527/https://www.fireeye.com/blog/execu
tive-perspective/2016/05/beyond_the_bottomli.html.

time.[29]

69.    Plaintiff and Class Members have a direct interest in Young Consulting's promises and duties to protect their Private Information, *i.e.*, that Young Consulting *not increase* their risk of identity theft and fraud. Because Young Consulting failed to live up to its promises and duties in this respect, Plaintiff and Class Members seek the present value of ongoing identity protection services to compensate them for the present harm and present and continuing increased risk of harm caused by Young Consulting's wrongful conduct. Through this remedy, Plaintiff seeks to restore themselves and Class Members as close to the same position as they would have occupied but for Young Consulting's wrongful conduct, namely its failure to adequately protect Plaintiff's and Class Members' Private Information.

70.    Plaintiff and Class Members further seek to recover the value of the unauthorized access to their Private Information permitted through Young Consulting's wrongful conduct. This measure of damages is analogous to the remedies for unauthorized use of intellectual property. Like a technology covered by a trade secret or patent, use or access to a person's Private Information is non-rivalrous—the unauthorized use by another does not diminish the rights-holder's ability to practice the patented invention or use the trade-secret protected technology.

---

[29]https://bankingjournal.aba.com/2019/09/what-compliance-needs-to-know-in-the-event-of-a-security-breach/.

Nevertheless, Plaintiff may generally recover the reasonable use value of the IP—*i.e.*, a "reasonable royalty" from an infringer. This is true even though the infringer's use did not interfere with the owner's own use (as in the case of a non-practicing patentee) and even though the owner would not have otherwise licensed such IP to the infringer. A similar royalty or license measure of damages is appropriate here under common law damages principles authorizing recovery of rental or use value. This measure is appropriate because (a) Plaintiff and Class Members have a protectible property interest in their Private Information; (b) the minimum damages measure for the unauthorized use of personal property is its rental value; and (c) rental value is established with reference to market value, *i.e.*, evidence regarding the value of similar transactions.

71.     Young Consulting's delayed notice letter also caused Plaintiff and Class Members harm. Furthermore, the letter did not explain the precise nature of the attack, the identity of the hackers, or the number of individuals affected. Young Consulting's decision to withhold these key facts is significant because affected individuals may take different precautions depending on the severity and imminence of the perceived risk. By waiting nearly four months to disclose the Data Breach and by downplaying the risk of misuse, Young Consulting prevented victims from taking meaningful, proactive, and targeted mitigation measures to secure their Private Information and accounts.

72.     Plaintiff and Class Members have an interest in ensuring that their Private Information is secured and not subject to further theft because Young Consulting continues to hold their Private Information.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this case as a class action on behalf of himself and on behalf of a Nationwide Class, and on behalf of a State Subclass specifically a California Subclass Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4).

74.     Plaintiff seeks certification of the following Classes:

> All individuals residing in the United States whose Private Information was compromised in the Data Breach ("Class").

> All individuals residing in California whose Private Information was compromised in the Data Breach ("California Subclass").

75.     Specifically excluded from the Classes are Young Consulting and its officers, directors, or employees; any entity in which Young Consulting has a controlling interest; and any affiliate, legal representative, heir, or assign of Young Consulting. Also excluded from the Classes are any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

76.     **Jurisdictional Amount.** As alleged herein, Plaintiff seeks damages on

behalf of themselves and the nearly one million putative class members, satisfying the $5 million jurisdictional requirement of 28 U.S.C. § 1332(d)(2).

77.    **Ascertainablity.** The members of the Class are readily identifiable and ascertainable. Young Consulting and/or its affiliates, among others, possess the information to identify and contact Class Members.

78.    **Numerosity: Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that joinder of all of them is impracticable. Young Consulting's statements reveal that the Class contains nearly one million individuals whose Private Information was compromised in the Data Breach.

79.    **Typicality: Federal Rule of Civil Procedure 23(a)(3).** As to the Class, Plaintiff's claims are typical of the claims of the members because all Class Members had their Private Information compromised in the Data Breach and were harmed as a result.

80.    **Adequacy of Representation: Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no known interest antagonistic to those of the Class and their interests are aligned with Class Members' interests. Plaintiff was subject to the same Data Breach as Class Members, suffered similar harms, and faces similar threats due to the Data Breach. Plaintiff has also retained competent counsel with significant experience litigating complex class actions, including Data Breach cases.

81.    **Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There are questions of law and fact common to the Class such that there is a well-defined community of interest in this litigation. These common questions predominate over any questions affecting only individual Class Members. The common questions of law and fact include, without limitation:

    a.    Whether Young Consulting owes Plaintiff and Class Members a duty to implement and maintain reasonable security procedures and practices to protect their Private Information;

    b.    Whether Young Consulting acted negligently in connection with the monitoring and/or protection of Plaintiff's and Class Members' Private Information;

    c.    Whether Young Consulting violated its duty to implement reasonable security systems to protect Plaintiff's and Class Members' Private Information;

    d.    Whether Young Consulting's breach of its duty to implement reasonable security systems directly and/or proximately caused damages to Plaintiff and Class Members;

    e.    Whether Young Consulting provided timely notice of the Data Breach to Plaintiff and Class Members; and

    f.    Whether Plaintiff and Class Members are entitled to compensatory damages, punitive damages, and/or nominal damages as a result of the Data Breach.

82.    Young Consulting has engaged in a common course of conduct and Plaintiff and Class Members have been similarly impacted by Young Consulting's failure to maintain reasonable security procedures and practices to protect victims' Private Information, as well as Young Consulting's failure to timely alert affected

victims to the Data Breach.

83.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most if not all Class Members would find the cost of litigating their individual claims prohibitively high and have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and risk inconsistent treatment of claims arising from the same set of facts and occurrences. Plaintiff knows of no difficulty likely to be encountered in the maintenance of this action as a class action under the applicable rules.

## CLAIMS FOR RELIEF

### COUNT I
**Negligence**
*(On Behalf of Plaintiff and the Class)*

84.    Plaintiff repeats and realleges every allegation set forth in the preceding paragraphs.

85.    Unbeknownst to Plaintiff and Class Members, Young Consulting and/or its affiliates obtained their Private Information from insurance and healthcare providers for commercial gain. Young Consulting collected and stored this Private

Information for purposes of providing services to its customers and their clients.

86.     Young Consulting owed Plaintiff and Class Members a duty to exercise reasonable care in protecting their Private Information from unauthorized disclosure or access.

87.     Young Consulting owed a duty of care to Plaintiff and Class Members to provide adequate data security, consistent with industry standards, to ensure that Young Consulting's systems and networks adequately protected the Private Information.

88.     Young Consulting's duty to use reasonable care in protecting Private Information arises as a result of the parties' relationship through healthcare and insurance providers, as well as common law and federal law, and Young Consulting's own policies and promises regarding privacy and data security. Plaintiff and Class members were the foreseeable and probable victims of any inadequate security practices.

89.     Section 5 of the Federal Trade Commission Act ("FTC Act") prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Young Consulting, of failing to use reasonable measures to protect Private Information. 15 U.S.C. § 45(a)(1).

90.     The FTC publications and orders described above also form part of the

basis of Young Consulting's duty in this regard.

91.    Young Consulting violated Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and failing to comply with applicable industry standards. Young Consulting's conduct was unreasonable given the nature and amount of Private Information they obtained, stored, and disseminated in the regular course of their business, and the foreseeable consequences of a data breach, including, specifically, the significant damage that would result to Plaintiff and Class Members.

92.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

93.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

94.    Young Consulting's violations of Section 5 of the FTC Act therefore constitute negligence *per se*.

95.    Young Consulting knew, or should have known, of the risks inherent in collecting and storing Private Information in a centralized location, Young Consulting's vulnerability to network attacks, and the importance of adequate

security.

96.     Young Consulting breached its duty to Plaintiff and Class Members in numerous ways, as described herein, including by:

a.     Failing to exercise reasonable care and implement adequate security systems, protocols, and practices sufficient to protect the Private Information of Plaintiff and Class Members;

b.     Failing to comply with industry standard data security measures leading up to the Data Breach;

c.     Failing to comply with its own Privacy Policy;

d.     Failing to comply with regulations protecting the Private Information at issue during the period of the Data Breach;

e.     Failing to adequately monitor, evaluate, and ensure the security of Young Consulting's network and systems;

f.     Failing to recognize in a timely manner that Private Information had been compromised; and

g.     Failing to timely and adequately disclose the Data Breach.

97.     Plaintiff's and Class Members' Private Information would not have been compromised but for Young Consulting's wrongful and negligent breach of its duties.

98.     Young Consulting's failure to take proper security measures to protect the sensitive Private Information of Plaintiff and Class Members created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access and exfiltration of Private Information by unauthorized third parties. Given that

healthcare service providers are prime targets for hackers, Plaintiff and Class Members are part of a foreseeable, discernible group that was at high risk of having their Private Information misused or disclosed if not adequately protected by Young Consulting.

99.    It was also foreseeable that Young Consulting's failure to provide timely and forthright notice of the Data Breach would result in injury to Plaintiff and Class Members.

100.    As a direct and proximate result of Young Consulting's conduct, Plaintiff and Class Members have and will suffer damages including: (i) the loss of rental or use value of their Private Information; (ii) the unconsented disclosure of their Private Information to unauthorized third parties; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, fraud, and/or unauthorized use of their Private Information; (iv) lost opportunity costs associated with addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from fraud and identity theft; (v) time, effort, and expense associated with placing fraud alerts or freezes on credit reports; (vi) anxiety, emotional distress, loss of privacy, and other economic and non-economic losses; (vii) the continued risk to their Private Information, which remains in Young Consulting's possession and is subject to further unauthorized

disclosures so long as Young Consulting fails to undertake appropriate and adequate measures to protect it; (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the inevitable and continuing consequences of compromised Private Information for the rest of their lives; (ix) the present value of ongoing credit monitoring and identity defense services necessitated by Young Consulting's data breach; and (x) any nominal damages that may be awarded.

**COUNT II**
**Unjust Enrichment**
***(On Behalf of Plaintiff and the Class)***

101.    Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 83.

102.    Plaintiff and Class Members have an interest, both equitable and legal, in the Private Information about them that was conferred upon, collected by, used by, and maintained by Young Consulting and that was ultimately stolen in the Young Consulting data breach.

103.    Young Consulting benefited by the conferral upon it of the Private Information pertaining to Plaintiff and the Class Members and by its ability to retain, use, and profit from that information. Young Consulting understood and valued this benefit.

104.    Young Consulting also understood and appreciated that the Private

36

Information pertaining to Plaintiff and Class Members was private and confidential and its value depended upon Young Consulting maintaining the privacy and confidentiality of that Private Information.

105.   Without Young Consulting's willingness and commitment to maintain the privacy and confidentiality of the Private Information, that Private Information would not have been transferred to and entrusted to Young Consulting. Further, if Young Consulting had disclosed that their data security measures were inadequate, they would not have been permitted to continue in operation by regulators or their clients.

106.   Young Consulting admits that it uses the Private Information it collects for, among other things: "marketing communications."[30]

107.   Because of Young Consulting use of Plaintiff's and Class Members' Private Information, Young Consulting sold more services and products than it otherwise would have. Young Consulting was unjustly enriched by profiting from the additional services and products it was able to market, sell, and create to the detriment of Plaintiff and Class Members.

108.   Young Consulting also benefitted through its unjust conduct by retaining money that it should have used to provide reasonable and adequate data

---

[30] https://youngconsulting.com/privacy-policy/

security to protect Plaintiff's and Class Members' Private Information.

109.    Young Consulting also benefitted through its unjust conduct in the form of the profits it gained through the use of Plaintiff's and Class Members' Private Information.

110.    It is inequitable for Young Consulting to retain these benefits.

111.    As a result of Young Consulting wrongful conduct as alleged in this Complaint (including among other things its failure to employ adequate data security measures, its continued maintenance and use of the Private Information belonging to Plaintiff and Class Members without having adequate data security measures, and its other conduct facilitating the theft of that Private Information), Young Consulting has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and Class Members.

112.    Young Consulting's unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein, including the compiling and use of Plaintiff's and Class Members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion and theft by hackers and identity thieves.

113.    It is inequitable, unfair, and unjust for Young Consulting to retain these wrongfully obtained benefits. Young Consulting's retention of wrongfully obtained monies violates fundamental principles of justice, equity, and good conscience.

114.   The benefit conferred upon, received, and enjoyed by Young Consulting was not conferred gratuitously, and it would be inequitable, unfair, and unjust for Young Consulting to retain the benefit.

115.   Young Consulting's defective security and its unfair and deceptive conduct have, among other things, caused Plaintiff and Class Members to unfairly incur substantial time and/or costs to mitigate and monitor the use of their Private Information and has caused the Plaintiff and Class Members other damages as described herein.

116.   Plaintiff and Class Members have no adequate remedy at law.

117.   Young Consulting is therefore liable to Plaintiff and Class Members for restitution or disgorgement in the amount of the benefit conferred on Young Consulting as a result of its wrongful conduct, including specifically: the value to Young Consulting of the Private Information that was stolen in the Data Breach; the profits Young Consulting received and is receiving from the use of that information; the amounts that Young Consulting overcharged Plaintiff and Class Members for use of Young Consulting's products and services; and the amounts that Young Consulting should have spent to provide reasonable and adequate data security to protect Plaintiff's and Class Members' Private Information.

## COUNT III
**Invasion of Privacy**
*(On Behalf of Plaintiff and the Class)*

118.  Plaintiff repeats and realleges every allegation set forth in paragraphs 1 through 83.

119.  Plaintiff and Class Members shared Private Information with Young Consulting and/or its affiliates that Plaintiff and Class Members wanted to remain private and non-public.

120.  Plaintiff and Class Members reasonably expected that the Private Information they shared with Young Consulting would be protected and secured against access by unauthorized parties and would not be disclosed to or obtained by unauthorized parties or disclosed or obtained for any improper purpose.

121.  Young Consulting intentionally intruded into Plaintiff's and Class Members' seclusion by disclosing without permission their Private Information to a criminal third party.

122.  By failing to keep Plaintiff's and Class Members' Private Information secure, and disclosing Private Information to unauthorized parties for unauthorized use, Young Consulting unlawfully invaded Plaintiff's and Class Members' privacy right to seclusion by, inter alia:

      a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person;

b.   Invading their privacy by improperly using their Private Information properly obtained for another purpose, or disclosing it to unauthorized persons;

c.   Failing to adequately secure their Private Information from disclosure to unauthorized persons; and

d.   Enabling the disclosures of their Private Information without consent.

123.   The Private Information that was compromised during the Data Breach was highly sensitive, private, and confidential, as it included Social Security numbers and other information that is the type of sensitive, personal information that one normally expects will be protected from exposure by the entity charged with safeguarding it.

124.   Young Consulting's intrusions into Plaintiff's and Class Members' seclusion were substantial and would be highly offensive to a reasonable person, constituting an egregious breach of social norms.

125.   As a direct and proximate result of Young Consulting's invasion of privacy, Plaintiff and Class Members suffered injury and sustained actual losses and damages as alleged herein. Plaintiff and Class Members alternatively seek an award of nominal damages.

## COUNT IV
## Breach of Third-Party Beneficiary Contract
### *(On Behalf of Plaintiff and the Class)*

126.   Plaintiff repeats and realleges paragraphs 1–83 as though fully set forth herein.

127.   On information and belief, Defendant entered into written contracts to provide software services to companies.

128.   In exchange, Defendant agreed, in part, to implement adequate security measures to safeguard the Private Information of Plaintiff and the Class and to timely and adequately notify them of the Data Breach.

129.   These contracts were made expressly for the benefit of Plaintiff and the Class, as Plaintiff and Class Members were the intended third-party beneficiaries of the contracts entered into between Defendant and its clients. Defendant knew that, if it were to breach these contracts with its clients, Plaintiff and Class Members would be harmed.

130.   Defendant breached the contracts it entered into with its clients by, among other things, failing to (i) use reasonable data security measures, (ii) implement adequate protocols and employee training sufficient to protect Plaintiff's and Class Members' Private Information from unauthorized disclosure to third parties, and (iii) promptly and adequately notify Plaintiff and Class Members of the Data Breach.

131.   Plaintiff and the Class were harmed by Defendant's breaches of contract, as such breach is alleged herein, and are entitled to the losses and damages they have sustained as a direct and proximate result thereof.

132.   Plaintiff and Class Members are also entitled to their costs and attorney's fees incurred in this action.

## COUNT V
### Declaratory and Injunctive Relief
### *(On Behalf of Plaintiff and the Class)*

133.   Plaintiff repeats and realleges every allegation in paragraphs 1–83 as though fully set forth herein.

134.   This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

135.   As previously alleged, Plaintiff and members of the Class are entered into implied contracts with Defendant, which contracts required Defendant to provide adequate security for the Private Information collected from Plaintiff and the Class.

136.   Defendant owed and still owes a duty of care to Plaintiff and Class Members that require it to adequately secure Plaintiff's and Class Members' Private Information.

137.   Upon reason and belief, Defendant still possesses the Private Information of Plaintiff and the Class Members.

138.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class Members.

139.   Since the Data Breach, Defendant has not yet announced any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

140.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendant's insufficient data security is known to hackers, the Private Information in Defendant's possession is even more vulnerable to cyberattack.

141.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their Private Information and Defendant's failure to address the security failings that led to such exposure.

142.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

143.   Plaintiff and the Class, therefore, seek a declaration (1) that

Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

    a.    Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    c.    Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

    d.    Ordering that Defendant segment employee data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

    e.    Ordering that Defendant purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their

provisions of services;

f.    Ordering that Defendant conduct regular database scanning and security checks; and

g.    Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

**COUNT VI**
**Violation of the California Consumer Privacy Act**
**Cal. Civ. Code §§ 1798.100, *et seq.***
***(On Behalf of Plaintiff and the California Subclass)***

144.    Plaintiff repeats and realleges every allegation in paragraphs 1–83 as though fully set forth herein.

145.    Plaintiff brings this claim individually and on behalf of the California Subclass against Young Consulting for violation of the California Consumer Privacy Act of 2018, Cal. Civ. Code §§ 1798.100, *et seq.* ("CCPA").

146.    Plaintiff and California Subclass Members are consumers and California residents as defined by Cal. Civ. Code § 1798.140(i).

147.    Young Consulting is a corporation that is organized or operated for the profit or financial benefit of its shareholders or other owners, with annual gross revenues over $25 million.

148.    Young Consulting is a business that collects consumers' Private

Information as defined by Cal. Civ. Code § 1798.140(e). Specifically, Young Consulting obtains, receives, or accesses consumers' Private Information when customers use Young Consulting's products to maintain and process consumer data.

149.   Young Consulting and its direct customers determine the purposes and means of processing consumers' Private Information. Young Consulting uses consumers' personal data to provide services at customers' requests, as well as to develop, improve, and test Young Consulting's services.

150.   Young Consulting had a duty to implement and maintain reasonable data security procedures and practices to protect Plaintiff's and California Subclass Members' Private Information. As a direct and proximate result of Young Consulting's violations of its duty to implement and maintain reasonable security procedures and practices, Plaintiff's and California Subclass Members' Private Information was subject to unauthorized access and exfiltration, theft and/or disclosure in violation of the CCPA, Cal. Civ. Code § 1798.150.

151.   Young Consulting violated Section 1798.150 of the California Consumer Privacy Act by failing to prevent Plaintiff's and the California Subclass Members' nonencrypted and nonredacted Private Information from unauthorized access and exfiltration, theft, or disclosure as a result of Young Consulting's violation of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

152.    Young Consulting knew or should have known that its data security practices were inadequate to secure California Subclass Members' Private Information and that its inadequate data security practices gave rise to the risk of a data breach.

153.    Young Consulting failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the Private Information it collected and stored.

154.    Young Consulting stored and maintained Plaintiff's and California Subclass Members' Private Information in a form that allowed criminals to access it.

155.    The cybercriminals accessed "nonencrypted and unredacted Private Information" as covered by Cal. Civ. Code § 1798.81.5(A)(1)(d), in the Data Breach.

156.    Young Consulting violated the CCPA, Cal. Civ. Code § l798.150(a), by failing to prevent Plaintiff's and California Subclass Members' Private Information from unauthorized access and exfiltration, theft, or disclosure.

157.    Because Young Consulting is still in possession of Plaintiff's and California Subclass Members' Private Information, Plaintiff and the California Subclass seek injunctive or other equitable relief to ensure that Young Consulting implements and maintains reasonable data security measures and practices to prevent an event like the Data Breach from occurring again.

158.   Plaintiff seeks injunctive relief in the form of an order requiring Young Consulting to employ adequate security practices consistent with law and industry standards to protect the California Subclass members' Private Information, requiring Young Consulting to complete its investigation, and to issue an amended statement giving a detailed explanation that confirms, with reasonable certainty, what categories of data were stolen and accessed without the California Subclass Members' authorization, along with an explanation of how the data breach occurred.

159.   Plaintiff and the California Subclass Members seek statutory damages or actual damages, whichever is greater, pursuant to Cal. Civ. Code § 1798.150(a)(1)(A).

160.   As a direct and proximate result of Young Consulting's violations of the Cal. Civ. Code §§ 1798.150, Plaintiff and California Subclass members suffered damages, as described above.

161.   On October 10, 2024, Young Consulting was sent written notice of its violations pursuant to Cal. Civ. Code § 1798.150. Because Young Consulting has not and cannot cure the noticed violation, Plaintiff and the California Subclass seek statutory damages pursuant to Cal. Civil Code § 1798.150(a)(1)(A).

162.   Plaintiff and the California Subclass therefore seek all actual and compensatory damages according to proof or statutory damages allowable under the CCPA, whichever are higher, and such other and further relief as this Court may

deem just and proper, including injunctive or declaratory relief.

## COUNT VII
### California Unfair Competition Law ("UCL")
### Cal. Civ. Code §§ 17200, *et seq.*
### *(On Behalf of Plaintiff and the California Subclass)*

163.    Plaintiff repeats and realleges each allegation set forth in paragraphs 1 through 83 as if fully set forth herein.

164.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

165.    Defendant has engaged in unlawful and unfair business practices within the meaning of California's Unfair Competition Law ("UCL"), Business and Professions Code Sections 17200, et seq.

166.    Defendant stored the Private Information of Plaintiff and Subclass Members in its IT network.

167.    Defendant knew or should have known that it did not maintain reasonable and appropriate security measures that complied with federal regulations to safeguard consumers' Private Information.

168.    Moreover, Defendant failed to disclose that Plaintiff's and Subclass Members' Private Information were susceptible to hackers as a result of Defendant's inadequate data security measures, and that Defendant was the only one in possession of that material information. Defendant had a duty to disclose information regarding the susceptibility of Plaintiff's and Subclass Members'

Private Information.

169.   Defendant's actions and inactions violated the "unlawful" prong of the UCL. Defendant violated Section 5(a) of the FTC Act (which is a predicate legal violation for this UCL claim) by misrepresenting, by omission, the safety and security of their computer systems, and its ability to safely store Plaintiff's and Subclass Members' Private Information.

170.   Defendant further violated Section 5(a) of the FTC Act by failing to implement reasonable and appropriate security measures or follow industry standards in its data security practices, by failing to ensure its affiliates with which it directly or indirectly shared the Private Information did the same, and by failing to timely notify Plaintiff and Class Members of the Data Breach.

171.   Had Defendant complied with these legal requirements, Plaintiff and Class Members would not have suffered the damages related to the Data Breach, and consequently from Defendant's failure to timely notify Plaintiff and Class Members of the Data Breach.

172.   Defendant's actions and inactions further violated the "unfair" prong of the UCL.

173.   Under the "balancing test," Defendant engaged in unfair business practices. The harm caused by Defendant's actions and omissions, as described in detail above, greatly outweigh any perceived utility. Defendant's failure to follow

basic data security protocols and failure to disclose inadequacies of Defendant's data security cannot be said to have had any utility at all. All of Defendant's actions and omissions in this respect were clearly injurious to Plaintiff and Subclass Members, directly causing the harms alleged below.

174. Similarly, Defendant engaged in unfair business practices under the "tethering test." Defendant's actions and omissions, as described herein, violated fundamental public policies expressed by the California Legislature. See, e.g., Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that personal information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendant's acts and omissions thus amount to a violation of the California law.

175. Defendant engaged in unfair business practices under the "FTC test." The harm caused by Defendant's actions and omissions, as described in detail above, is substantial in that it affects thousands of Subclass Members and has caused those persons to suffer actual harm. Such harms include a substantial risk of identity theft,

disclosure of Plaintiff's and Subclass Members' Private Information to third parties without their consent, diminution in value of their Private Information.

176.   These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Subclass Members. They were likely to deceive the public into believing their Private Information was securely stored when it was not. The harm these practices caused to Plaintiff and Subclass Members outweighed their utility, if any. Defendant's wrongful conduct is substantially injurious to consumers, offends legislatively declared public policy, and is immoral, unethical, oppressive, and unscrupulous.

177.   Plaintiff and Subclass Members continue to suffer harm, as Plaintiff's and Subclass Members' Private Information remains in Defendant's possession, without adequate protection, and remains in the hands of those who obtained it without their consent.

178.   Defendant's actions and omissions violated Section 5(a) of the Federal Trade Commission Act.

179.   Plaintiff and Class Members suffered injury in fact and lost money or property as a result of Defendant's violations of the UCL. Plaintiff and the California Subclass suffered from entering into transactions with Defendant that should have included adequate data security for their Private Information, by experiencing a

diminution of value in their Private Information as a result if its theft by cybercriminals, the loss of Plaintiff's and Subclass Members' legally protected interest in the confidentiality and privacy of their Private Information, the right to control that information, and additional losses as described above.

180.   As a result of Defendant's unlawful and unfair business practices in violation of the UCL, Plaintiff and Subclass Members are entitled to damages, injunctive relief, and reasonable attorneys' fees and costs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and the Class set forth herein, respectfully requests the following relief:

A.     That the Court certify this action as a class action and appoint Plaintiff and their Counsel to represent the Class;

B.     That the Court grant permanent injunctive relief to prohibit and prevent Young Consulting from continuing to engage in the unlawful acts, omissions, and practices described herein;

C.     That the Court award Plaintiff and Class Members compensatory, consequential, and general damages, including nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

D.     That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Young Consulting as a result of their

unlawful acts, omissions, and practices;

E.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses; and

F.    That the Court award pre-and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial in the instant action.

Dated: October 11, 2024

/s/ *Kristen Tullos Oliver*
Roy E. Barnes
Georgia Bar No. 039000
J. Cameron Tribble
Georgia Bar No. 754759
Kristen Tullos Oliver
Georgia Bar No. 941093
**BARNES LAW GROUP, LLC**
31 Atlanta Street
Marietta, GA 30060
Telephone: 770-227-6375
Fax: 770-227-6373
E-Mail: roy@barneslawgroup.com
E-Mail: ctribble@barneslawgroup.com
E-Mail: ktullos@barneslawgroup.com

Norman E. Siegel*
J. Austin Moore*
Tanner J. Edwards*
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: (816) 714-7100

E-Mail: siegel@stuevesiegel.com
E-Mail: moore@stuevesiegel.com
E-Mail: tanner@stuevesiegel.com

*Counsel for Plaintiff*
*\*Pro Hac Vice Forthcoming*